IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| NATHALIE HOLMES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| vs. ) | |
| ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| | |
| Defendant. | |

## COMPLAINT

### I. JURISDICTION

1. This is a suit for relief from race discrimination instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §2000e *et seq.*, and 42 U.S.C. §1981 ("§1981"). The jurisdiction of this Court is based on 28 U.S.C. §§1331 and 1343(4).

2. Plaintiff Nathalie Holmes ("Plaintiff") timely filed a discrimination charge defendant Wexford Health Sources, Inc. ("Defendant") with the Equal Employment Opportunity Commission within 180 days after the last act of discriminatory treatment. Plaintiff has further filed this suit within 90 days after receipt of her right-to-sue letter from the EEOC.

## II. PARTIES

3. Plaintiff is a citizen of the United States over the age of nineteen and a resident of Jefferson County, Alabama.

4. Defendant is a corporation headquartered in Pittsburgh, Pennsylvania. It is and was at all times relevant to this complaint an employer as contemplated under Title VII.

## III. STATEMENT OF FACTS

5. Plaintiff is African-American.

6. In or about October of 2018, Plaintiff became employed by Defendant.

7. Defendant provided inmate services to the Alabama Department of Corrections, including mental health care.

8. Plaintiff worked for Defendant at the Department's Donaldson Correctional Facility in Jefferson County, Alabama.

9. In or about July of 2019, Meaghan Bourque was transferred by Defendant to Donaldson as Defendant's Mental Health Site Program Manager there.

10. Bourque then became Plaintiff supervisor.

11. Bourque is Caucasian.

12. During the time she worked under Bourque, Plaintiff was employed as a Mental Health Activity Technician.

13. There were then four Activity Techs: three African-Americans including Plaintiff and one Caucasian, Todd Gothard.

14. In addition to supervising the Activity Techs, Bourque also supervised the Observers (about 12, mostly African-American) and the Mental Health Professionals ("MHP") (about 8, mostly Caucasian).

15. Plaintiff and the other Activity Techs had concerns about racially discriminatory treatment from Bourque going back to since she came to Donaldson.

16. Borque spent more time with the predominately-white MHP's and were genial, respectful, and interactive with them but spent little time with the predominately-Black Activity Techs and was brusque and disrespectful to them.

17. Bourque also failed to provide requested supplies needed by the Activity Techs, left them out of meetings that were included in their job descriptions, removed their office furniture, and moved them out of their office in the mental health building into cramped closets in the cell block hallways.

18. Further, the Activity Techs noted that Bourque treated Gothard, the only white Activity Tech, more respectfully than the Black Techs and treated him as a de facto "lead" Tech, directing inquiries, directives, and information applicable to all the Techs to him.

19. Gothard had the least seniority among the Activity Techs.

20. On or about December 12, 2019, Bourque sent an email to the Activity Techs and others directing that Gothard distribute certain work to the Black Activity Techs and that they were to complete it and send it back to Gothard.

21. The Activity Techs felt that this was further preferential treatment given Gothard.

22. Gothard went to Bourque and told her that, while he did not believe she was that way, her email was perceived as "racist."

23. Gothard also sent a letter to Michelle Bessette, Defendant's Site Administrator at Donaldson and Bourque's supervisor.

24. Bessette is Caucasian.

25. In the letter, Gothard discussed Bourque's email and stated that he was "concern[ed] with Bourque's "continuing to place [him] as the point person for the Activity Techs."

26. Gothard further stated that "mak[ing] [him] the point person above them [was] improper and was understood by these women as placing [him] in a position of privilege."

27. Gothard further relayed that he had told Bourque that her email was perceived as racist.

28. In or about April of 2020, a meeting of the Activity Techs, Bourque, and Richard Payne (Caucasian supervisor under Bourque), was held to discuss concerns raised by the Techs about Bourque hindering and marginalizing their work while giving preferential treatment to the mostly white MHP's.

29. Bourque was not at all responsive to their concerns but rather was hostile to them.

30. Bourque said that their attitudes "suck," that they were "content with being disgruntled," and that she would not "baby" them.

31. On or about May 8, 2020, Bourque gave Plaintiff an unfounded disciplinary action.

32. In addition to being unfounded, the disciplinary action also stated that Plaintiff had been written up by Bourque in October of 2019.

33. This was false.

34. Plaintiff had not received any disciplinary action in October of 2019 or any other time prior to this one in May of 2020.

35. After Bourque gave Plaintiff this unfounded disciplinary action, Plaintiff complained to Bessette about it.

36. Plaintiff also told Bessette that she and the other "Black" Activity Techs felt that they had been treated unfairly by Bourque.

37. Bessette told Plaintiff that she was not the first to have made such a complaint about Bourque to her.

38. On or about June 11, 2020, Plaintiff was on break in a breezeway at the facility.

39. The breezeway was cooler than the Techs' work area and they often took allowed work breaks there.

40. Bourque came out to the breezeway and asked Plaintiff if she needed a workspace.

41. Plaintiff told Bourque no, that she was on break.

42. On or about June 12, 2020, Plaintiff was on a work break in the breezeway again that morning.

43. Bourque came out there and asked Plaintiff what she was doing there.

44. Plaintiff told Bourque that her second group session of the day had been delayed so she was taking her morning break.

45. Later that day, around 11:45 a.m., Plaintiff was taking her lunch break on the breezeway.

46. Bourque came out there and took Plaintiff's picture.

47. After lunch, Plaintiff went to see Bessette to complain about Bourque stalking her in the breezeway while she was on break and photographing her.

48. Bessette told Plaintiff that she could not talk to her and to come back at 2:00 p.m.

49. Before 2:00, Bourque approached Plaintiff and told her to pack her things and meet Bourque in the visitation yard.

50. Plaintiff did so, and met with Bourque and Payne.

51. Bourque gave Plaintiff a termination form that said she was terminated for being in the breezeway June 11 and 12 when she should have been working and that she not filed structured activity logs as directed.

52. The claims were false.

53. Plaintiff's position was first offered to a Caucasian person, who declined it. It was then offered to an African-American and accepted.

## IV.  CAUSES OF ACTION

### COUNT I

### TITLE VII

54. Paragraphs 1-53 above are incorporated by reference.

55. Defendant violated Plaintiff's rights under Title VII by terminating her employment because of her race and/or her complaints of race discrimination in the workplace.

56. With respect to Plaintiff's claim of race discrimination, her race was a motivating factor in Defendant's decision to terminate her employment.

57. Defendant, through its employees acting in a managerial capacity, either acted with malice or with reckless indifference to Plaintiff's federally protected rights.

58. As a result of the above described discriminatory acts, Plaintiff has been made to suffer lost wages and benefits, as well as emotional distress and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's acts as described herein violated Title VII;

(ii) That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating her and placing her in the position she would have occupied in the absence of discrimination (or front-pay), providing back-pay with interest, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from further violation of Plaintiff's rights under Title VII;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor;

(v) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

## COUNT II

### 42 U.S.C. §1981

59. Paragraphs 1-53 above are incorporated by reference.

60. Defendant violated Plaintiff's rights under §1981 by terminating her employment because of her race and/or her complaints of race discrimination in the workplace.

61. Defendant, through its employees acting in a managerial capacity, either acted with malice or with reckless indifference to Plaintiff's federally protected rights.

62. As a result of the above described discriminatory acts, Plaintiff has been made to suffer lost wages and benefits, as well as emotional distress and mental anguish.

**WHEREFORE, these premises considered**, Plaintiff requests the following:

(i)  That the Court issue an Order declaring that Defendant's acts as described herein violated §1981;

(ii)  That the Court enter an Order requiring Defendant to make Plaintiff whole by reinstating her and placing her in the position she would have occupied in the absence of discrimination (or front-pay), providing back-pay with interest, and ordering Defendant to pay compensatory and punitive damages as a jury may assess;

(iii)  That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant, from further violation of Plaintiff's rights under §1981;

(iv) That the Court award Plaintiff prejudgment and post-judgment interest at the highest rates allowed by law and an amount to compensate her for any adverse tax consequences as a result of a judgment in her favor;

(v)  That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees, expert witness fees, and expenses.

>Respectfully submitted,
>
>s/ Adam M. Porter
>Adam M. Porter
>Attorney for Plaintiff
>Adam M. Porter, LLC
>2301 Morris Avenue, Suite 102
>Birmingham, Alabama 35302
>Phone: (205) 322-8999
>Facsimile: (205) 402-4619
>Email: adam@adamporterlaw.com

Plaintiff requests trial by struck jury.

>s/ Adam M. Porter
>Attorney for Plaintiff

Defendant's Address:
Wexford Health Sources, Inc.
c/o Prentice Hall Corporation System, Inc., Registered Agent
641 South Lawrence St.
Montgomery, AL 36104